In re DELTA LLOYDS INSURANCE
COMPANY OF HOUSTON,
Texas.

In re Hurricane Rita Homeowners'
Claims.

In re Southeast Surplus Underwriters
General Agency, Inc.

Nos. 08–0142, 08–0208, 08–0427.

Texas Judicial Panel on Multidistrict
Litigation.

Sept. 5, 2008.

ON REVIEW BY THE MULTIDISTRICT
LITIGATION PANEL

Justice HANKS delivered the opinion of the Multidistrict Litigation Panel, in which Justice LANG and Justice STONE joined.

Before this Panel are three motions to transfer various insurance coverage cases to a single court for the coordination of pretrial proceedings.[1] These cases, arising from the defendants' denial of Hurricane Rita property damage claims, are currently pending in Jasper, Jefferson, Hardin and Orange Counties. The first motion, filed by Delta Lloyd's Insurance Company of Houston ("Delta"), seeks to consolidate four cases brought against Delta and its adjusters. The second motion, filed by Southeast Surplus Underwriters General Agency Inc. ("Southeast"), seeks to consolidate twelve cases brought against Southeast, as the managing general agent for Farmers and Ranchers Insurance Company ("Farmers"), and/or Farmers and its adjusters. The third motion, filed by Standard Insurance Company, American–Bankers Insurance Company, American Security Insurance Company and Voyager Insurance Company (collectively, "the Carriers"), seeks to consolidate five cases against the Carriers and their adjusters and one case against Underwriters at Lloyd's of London ("Underwriters") and its adjusters. We grant Delta's motion in part and deny it in part. We grant Southeast's motion. We deny the Carriers' motion.

---

1. Delta and the Carriers have asked this Panel to consolidate their motions to transfer into one cause. Although, for administrative purposes, we have considered these two motions together, we do not believe that the consolidation of the motions is warranted and we decline to do so. Accordingly, we examine each of the three motions individually and on its own merits.

## Background

For each of the three motions before us, the plaintiffs in the underlying cases own property covered by insurance policies. All of the plaintiffs are represented by the same law firm, and they allege that their respective defendants engaged in unfair settlement practices and wrongfully denied their claims for property damage caused by Hurricane Rita. In each of the petitions, the plaintiffs allege violations of the Texas Insurance Code, fraud, breach of contract and breach of the duty of good faith and fair dealing.

The petitions in all of the underlying cases contain nearly identical generalized allegations of wrongdoing. The discovery requests are nearly identical, and are typical of initial discovery in insurance coverage disputes—seeking general information regarding each defendant's justification for denying the claims, as well as each defendants' policies and procedures for investigating the claims, compliance with the requisite insurance code provisions for adjusting the claims and their communications with the plaintiffs. The discovery requests are voluminous, averaging approximately 93 requests for production and 23 interrogatories (plus requests for disclosure) per defendant insurance carrier and 64 requests for production and 23 interrogatories (plus requests for disclosure) for the remaining defendants.

## Mandates of Rule 13

Each of the three motions to transfer asks us to consolidate a particular subset of cases into an MDL. Rule 13 authorizes this Panel to grant a motion for the transfer of "related" cases from different trial courts to a single pretrial judge if the transfer will (1) serve the convenience of the parties and witnesses and (2) promote the just and efficient conduct of litigation. *See* Tex.R. Jud. Admin. 13.3(a)(2), Tex. Gov't Code § 74.162 (West 2005). Our decision regarding a motion to transfer is necessarily influenced by our review of the contents of the parties' pleadings and discovery in the cases at issue in the motion. Accordingly, for each of the three motions to transfer, we analyze the case grouping suggested by the defendants under the rubric of Rule 13 and the factual issues at play in the cases.

## Are the Cases Related?

Under Rule 13.2(f), cases are related if they involve "one or more common questions of fact." *See* Tex.R. Jud. Admin. 13.2(f), Tex. Gov't Code § 74.162 (West 2005). While the rule requires common questions of fact, strict identity of issues and parties in the cases is not required and cases containing case-specific issues such as damages may still be transferred under Rule 13. *See In re Hurricane Rita Evacuation Bus Fire,* 216 S.W.3d 70, 72 (Tex. M.D.L. Panel 2006). As we have held, "every case is different. No two cases are alike. A rule 13 transfer of cases does not require that the cases be congruent or anything close to it." *In re Hurricane Rita Evacuation,* 216 S.W.3d at 72.

The arguments and counter-arguments made for each of the three motions to transfer are similar. For example, in each of the three motions, the movants argue that the cases they list are related because they are all insurance coverage disputes arising from property damage sustained during Hurricane Rita. Accordingly, all three groups of movant defendants contend that a number of common questions of fact exist and that these common questions of fact mandate the transfer of their cases to a single pretrial court.[2]

In contrast, the Respondents argue that all of the cases covered by the three motions are highly individualized and that they do not share common questions of fact. Respondents argue that each individual plaintiff had different problems with each defendant carrier and adjuster, and the cases involve separate and distinct pieces of real property located in four different counties.

At the outset, we note that the fact that these insurance coverage disputes may arise from the same disaster does not mean *ipso facto* that they are "related" for purposes of Rule 13. Here, in all three motions to transfer, the occurrence of a single disaster—Hurricane Rita—is a common undisputed fact rather than a "common question of fact" under Rule 13. *See, e.g., In re Personal Injury Litigation Against Great Lakes Dredge & Dock Company LLC,* 283 S.W.3d 547 (Tex. M.D.L. Panel, 2007)(denying motion to transfer where the alleged similarities between the cases are "not common questions of fact; instead they are undisputed facts"). Movants' reliance upon our opinion in *In re Hurricane Rita Evacuation Bus Fire,* 216 S.W.3d 70 (Tex. M.D.L. Panel 2006) to support their argument that the occurrence of Hurricane Rita makes all of these cases related under Rule 13 is misplaced. That case is factually distinguishable from the case at bar.

In *In re Hurricane Rita Evacuation Bus Fire,* where we found that the cases arising from a single disaster—a tragic bus fire—were related, there are common questions of fact regarding the occurrence of the disaster itself. As we noted, because these fact questions are central to

the resolution of each case, "none of the parties seriously denied that the liability issues in each of the cases will be substantially the same," and in all of the cases the lawyers would have to examine "the same large pool of employees and fact witnesses" and explore the same negligence and causation issues of this single event. *In re Hurricane Rita Evacuation Bus Fire,* 216 S.W.3d at 72; *see also In re Cano Petroleum Inc, et. al.,* 283 S.W.3d 179 (Tex. M.D.L. Panel, 2008)(granting motion to transfer cases where common questions of fact regarding a single disaster—a wildfire—exist in seven lawsuits).

However, in each of the three motions currently presented to us, the pleadings and the discovery in the underlying cases reveal that the occurrence of Hurricane Rita is not an actual "question of fact," nor is any purported question of fact pertaining to Hurricane Rita central to the resolution of the mostly contractual and statutory claims asserted against the various defendants. Rather, the underlying factual questions of each case below are the alleged conduct of each of the particular defendants in adjusting the individual insurance claims and the alleged contractual basis for denying each plaintiff's claims. These are the underlying questions of fact that we must examine to determine whether the cases at issue in each motion are "related" under Rule 13.

### Delta

■ Applying the above analysis, each of the four cases against Delta do share common questions of fact regarding Delta's alleged conduct in adjusting the individual insurance claims and the alleged contractual basis for denying each plain-

---

**2.** Delta and the Carriers specifically request that the cases they list in their motions be consolidated and transferred to Harris County. Southeast, after initially requesting that

its listed cases be transferred to Bexar County, withdrew its request and now merely asks for a transfer, leaving the choice of appropriate county to our discretion.

tiff's claims. Accordingly, we agree with Delta that these four cases are "related" under Rule 13.

In *In re Ocwen Loan Servicing, LLC Mortgage Servicing Litigation*, 286 S.W.3d 669 (Tex. M.D.L. Panel 2007), the Panel addressed factual allegations very similar to the facts before us now and our opinion in that case is instructive to our analysis here. In *Ocwen*, the plaintiffs argued that the cases were highly individualized and not related because each plaintiffs' experience with the defendant in servicing their mortgages "was their own personal nightmare, with unique facts" and each case involves "a different specific piece of real property" located in different counties. *Id.* However, a review of the pleadings and discovery revealed that the claims in each of cases are "based on standard practices and procedures" followed by a single company in the conduct of its business. *Id.* Thus we held that, under those circumstances, each case shared one or more common questions of fact and that under Rule 13 they were related.

> The claims in each of the nine pending cases are based on standard practices and procedures followed by Ocwen in its business of servicing mortgage loans. Accordingly, in all nine cases, discovery will be aimed at disclosing the nature of these common practices and procedures. In addition, similar legal issues will arise as to whether those standard practices and procedures give rise to liability under the commonly alleged theories.

*Id.*

Similarly, as reflected in the plaintiffs' pleadings and discovery requests, the claims against Delta all arise from standardized policy language used by Delta and from the same standard practices and procedures allegedly followed by Delta with respect to each plaintiff's claims. Thus, all these cases will focus upon these practices and procedures and the policy language at issue, and the discovery in all of these cases will reflect that same focus. Under these circumstances, we find that the four Delta cases share one or more common questions of fact and are "related" under Rule 13 to warrant transfer.

## Southeast

Likewise, the twelve cases against Southeast also share common questions of fact regarding the defendants' alleged wrongdoing in adjusting the individual insurance claims and the defendants' alleged contractual basis for denying each plaintiff's claims. The plaintiffs' pleadings and discovery requests for these twelve cases demonstrate that the claims asserted against Southeast all arise from the same policies issued by Southeast and from the same standard practices and procedures allegedly followed by Southeast with respect to each plaintiff's claims. Thus, all these cases will be aimed at disclosing the nature of these practices and procedures and construing the policy language at issue, and will share common discovery requests and responses to those ends. Accordingly, we find that these twelve cases are also "related" under Rule 13 to warrant transfer. *See In re Ocwen*, 286 S.W.3d 669.

## The Carriers

■ In contrast, we agree with Respondents that the six cases made the subject of the Carriers' motion are not "related" under Rule 13 to support transfer. These cases do not share the same underlying questions of fact. They do not share common questions of fact regarding the alleged conduct of each defendant in adjusting the individual insurance claims and the alleged contractual basis for denying each plaintiff's claims. Although the Carriers contend that they are all members of the

"Assurant Group," a group of companies that "sells credit related products; memberships products and, extended service contracts," the Carriers have not established that the claims against them are based on standard practices and procedures common to all four of the Carriers and the Underwriters in handling the claims, or that the claims arise from the same standardized policy language. *See, e.g., In re Ocwen,* 286 S.W.3d 669. Similarly, there are no allegations before us that the Carriers and Underwriters acted pursuant to a common scheme to harm plaintiffs. Thus, despite identical generalized allegations of wrongdoing, the various petitions presented by Carriers give rise to different questions of fact based on each plaintiff's dealings and contractual relationship with the defendants. Accordingly, we reject the argument that these cases involve one or more common questions of fact among all of the cases within the meaning of Rule 13.

### Would the Transfer Further Convenience and Efficiency?

■ We next review whether the transfer of these cases would serve the goals of Rule 13—in other words, whether it will (1) serve the convenience of the parties and witnesses and (2) promote the just and efficient conduct of litigation. *See* TEX.R. JUD. ADMIN. 13.3(a)(2), TEX. GOV'T CODE § 74.162 (West 2005). "The movant need not show anyone has already been inconvenienced or that there are existing problems to be addressed. Instead, we must simply be convinced that transfer to a pretrial judge would promote Rule 13's goals of convenience and efficiency." *In re Hurricane Rita Evacuation Bus Fire,* 216 S.W.3d 70, 72 (Tex. M.D.L. Panel 2006). While the number of parties and cases is a relevant factor in ruling on a motion to transfer, "the number of pending cases and parties is not directly determinative of the necessity of a pretrial transfer." *In re Vanderbilt Mortgage & Fin. Inc.,* 166 S.W.3d 12, 14 (Tex. M.D.L. Panel 2005).

### Delta

■ We agree that transferring the cases listed in Delta's motion to a single pretrial court would further the convenience of both the parties and witnesses in those cases, and would promote the just and efficient resolution of these cases. As a result of the common questions of fact regarding Delta's alleged conduct in adjusting the insurance claims and the contractual basis for the denial of the claims, the same pool of fact and employee witnesses will likely need to be deposed in each one of the four cases against Delta. As we have held, "[w]hen Rule 13 voices its concern for the convenience of parties and witnesses, it has such persons [fact and employee witnesses] in mind." *In re Hurricane Rita Evacuation Bus Fire,* 216 S.W.3d at 72. Further, as evidenced by the voluminous written discovery sought thus far by plaintiffs, discovery in these cases will be time consuming and costly to both the parties and witnesses, and both the discovery requests and responses are likely to be identical in each of the four cases. Coordination of this discovery in a single pretrial court will greatly reduce the time and expense to both the parties and fact witness, because, among other things, the consolidated proceedings will prevent the needless time and expense of quadrupled written and deposition discovery, and consolidation will also ensure that identical pretrial issues, including discovery disputes and expert issues regarding Delta's conduct, are resolved in a consistent manner among the cases. *In re Steven E. Looper, Individually, et. al.,* No. 06–1010 (Tex. M.D.L. Panel April 10, 2006).

However, we do not agree that this pretrial judge should necessarily be located in Harris County, a county in which none of these cases are pending. A pretrial judge will be appointed by separate order.

## Southeast

■ For the same reasons, we find that the transfer of the cases against Southeast to a single pretrial court would be convenient to both the parties and witnesses and promote the just and efficient resolution of these cases. Eight of the twelve cases against Southeast were filed in and involve property located in Orange County. The remaining four cases were filed in and involve properties located in Jasper and Hardin Counties-which have a contiguous border with Orange County. Accordingly, we find that the transfer of these cases to a single court would best serve the convenience the parties and witnesses alike in this case. A pretrial judge will be appointed by separate order.

## The Carriers

We have previously noted that the Carriers cases are not "related" for purposes of Rule 13. Accordingly, we need not address the issue of whether transfer would be convenient to the parties and witnesses and promote the just and efficient resolution of the cases listed by the Carriers' motion. Further, in light of our conclusion, we need not address other arguments raised by movants regarding any alleged efficiency and convenience that might be achieved by transfer due to the common representation by the Mostyn Law Firm of the plaintiffs in every case, nor do we deem such contention to be relevant in these cases.

1. In every case the pleadings allege that each

## Conclusion

For the reasons stated above, we conclude that Delta and Southeast have shown that the cases listed their motions are "related" within the meaning of Rule 13 and that transferring them to one pretrial court would serve the convenience of the parties and witnesses and the efficient resolution of the claims. Accordingly, Delta's motion is granted in part and denied in part and Southeast's motion is granted.

For the reasons stated above, we conclude that the Carriers have not shown that the cases that are the subject of their motion are "related" within the meaning of Rule 13. Accordingly, the Carriers' motion is denied.

Presiding Judge PEEPLES filed an opinion concurring in part and dissenting in part, in which Justice McCLURE joined.

Presiding Judge PEEPLES, joined by Justice McCLURE, concurring in part and dissenting in part.

First-party insurance lawsuits have been filed in several southeast Texas counties involving damage caused by Hurricane Rita in September 2005. Three groups of defendant insurers have filed motions seeking assignment of certain cases to a single court for pretrial handling. We are authorized to grant these motions if the cases are "related" and if assigning them to one pretrial court would serve the interests of convenience, efficiency, and justice. *See* Tex.R. Jud. Admin. 13.2(f), 13.3(a), 13.3(*l*).

The majority has granted the motions filed by Delta and Southeast, but it has denied (because they are not related) the identical motion filed by four other insurers, who seek a pretrial court in identical cases[1] arising from the same hurricane.

insurer and its agents: (a) wrongfully denied

The entire panel agrees that it would be convenient and efficient for our legal system to have one pretrial court handle the Delta and Southeast cases. None of us disagree about that. We do disagree about what it means for cases to be "related"—that is, cases that involve "one or more common issues of fact." *See* Tex.R. Jud. Admin. 13.1(b), 13.2(f).

I would hold that the fact that one disaster caused every bit of damage in these cases makes them related. This would not mean that in the future all cases arising from common disasters would automatically be given a pretrial MDL court; the convenience and efficiency elements would still have to be proved, as they have been here. The majority's view of relatedness is very different. It holds that the cases against Delta and Southeast are related to each other only because the homeowners have made the same allegations against Delta and Southeast and issued the same repetitive discovery demands to them[2];

---

plaintiff's claims for repairs, (b) didn't adequately compensate plaintiff, (c) misrepresented that the damage was not covered, (d) didn't try to settle fairly, (e) failed to explain the reasons for their inadequate offer, (f) failed to affirm or deny coverage within a reasonable time, (g) refused to fully compensate plaintiffs, (h) failed to conduct a reasonable investigation, (i) performed an outcome-oriented investigation, (j) didn't timely acknowledge the claim or timely begin its investigation, (k) failed to accept or deny the claim within 15 days, (*l*) didn't pay the claim without delay, and (m) failed to pay the claim after liability was reasonably clear, thereby breaching its common law duty of good faith and fair dealing. After these allegations, each petition says the insurers engage in this conduct as a matter of course:

> Plaintiff's experience is not an isolated case. The acts and omissions [the insurer] committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of [the insurer] with regard to handling these types of claims. [The insurer's] entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholders.

In other words, all these cases are linked by the "general business practice" and the "unfairly designed" process. Each case will involve the same discovery, again and again, as shown in footnote two below.

2. In each case plaintiffs seek extracontractual damages by pleading that insurance code standards were violated and the claims were handled in bad faith. They allege that the defendants' "general business practice" is tilted toward denying claims. See footnote one above.

In addition to seeking routine discovery of case-specific information, plaintiffs have, for example, sought the following documents from the defendants in all cases: (a) training manuals and policy manuals for adjusters of homeowner claims, (b) records concerning the criteria for choosing vendors and contractors, (c) instruction materials and guides for those who handle claims of bad faith or unfair claims settlement practices, and (d) correspondence concerning inappropriate behavior of any person associated with the handling of property claims.

They also seek in all cases the following documents, "limited to the last five (5) years": (a) communications from insurance regulators, (b) documents concerning net worth, (c) property-damage complaints and lawsuits by other insureds, (d) advertisements, (e) files and reports of contractors and roofers used or approved by the insurer, (f) all other files handled by the adjuster in plaintiff's case, (g) lists of attendees and dates and locations of meetings for staff and adjusters concerning property claims, and (h) all affidavits and depositions given in other cases by the employees who have handled plaintiff's claim.

For other periods of time, they seek in all cases: (a) correspondence and lawsuits involving "vendors, staff or management" concerning property claims since 2000, (b) all reports and correspondence containing names of corporate representatives who testified in property damage lawsuits since 1999, (c) "any and all" correspondence to and from vendors concerning property damage claims since 2000, "including but not limited to computer disks, e-mails, paperwork, and manuals," and (d) documents, correspondence, and reports concerning suits filed against defendant nationwide containing an element of property damage since 1999.

these constitute common questions of fact, which Delta and Southeast will have to answer again and again. I agree with that holding. But, says the majority, the four other insurers face extracontractual claims (and the allegations and discovery summarized in footnotes one and two) in only one case per insurer,[3] and therefore their one case is not related to any other case. They will answer the extracontractual claims only in their lone case, but not repetitively in others. Apparently, in a future case if dozens of lawsuits are brought against dozens of different defendants arising from one natural disaster, they would not necessarily be related under today's holding. All this seems to me an unduly restrictive understanding of relatedness.

What does relatedness mean? It should be a threshold matter for us. Convenience and efficiency should be our real inquiry; they are the heart of our statute and rule.[4] "One or more common issues of fact" does not mean that we balance the similarities against the differences and decide whether the cases are more like than unlike.[5] Balancing and weighing pertain to the issues of convenience and efficiency, not relatedness. Nor does relatedness mean that the common question (or questions) of fact must be "material" because the Legislature consciously rejected that word. When the Legislature defined "related" as "involving one or more common questions of fact," it modified earlier versions of the bill that would have placed the word *material* in front of the phrase *issues of fact,* and it also changed the plural "issues" to "one or more issues."[6] And when the supreme court meant "material fact" in other rules, it said so.[7]

The proper relatedness requirement is satisfied here, where one enormous hurricane is the context and background for each of these cases. The majority says that the "occurrence" of the hurricane is

The entire panel has held that because of such discovery requests the cases against Delta and Southeast are related, and the use of one pretrial court will serve the goals of convenience to the parties and judicial efficiency.

3. Actually, one of the carriers is defending two cases, but this does not rise to the same level of relatedness as Delta's four.

4. There is good reason why the MDL statute and rule require *factual* relatedness. If we could assign cases to a single pretrial court whenever they were legally related—but not factually related—we would in effect be able to create statewide complex litigation courts for cases involving DTPA, products liability, medical malpractice, and insurance coverage issues. Neither the Legislature (by its statute) nor the Supreme Court (by its rule) intended for us to have such sweeping power. Our authority was therefore limited to transferring factually related cases to a pretrial court when transfer would promote convenience and efficiency.

5. In *In re Silica Prods. Litig.,* 166 S.W.3d 3, 6 (Tex. M.D.L. Panel 2004), we said, "Rule 13 ... allows transfer to a pretrial judge when there are common fact issues, even though in a given case the common issues might not outweigh the individual, case-specific issues."

6. The Legislature dropped the word "material" and also made clear that one common question of fact was enough. *Compare* the House and engrossed versions of H.B.4 (" 'Related' means that cases involve common material issues of fact") *with* the later Senate version and enrolled and final versions (panel may transfer "cases involving one or more common questions of fact"). The successive versions of the bill are available at:

http://www.capitol.state.tx.us/BillLookup/Text.aspx?LegSess=78R & Bill=HB4.

7. Rule 166a, for example, authorizes a traditional summary judgment when there is "no genuine issue of material fact" and the movant is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c). The rule also refers to issues of "material fact" in subdivisions (e) and (i). By contrast, rule 174 refers simply to "common question of law or fact."

not a disputed fact. That is true. Everyone agrees that Hurricane Rita occurred. But the hurricane is the foundation and the context for all these cases. It stands in the background and cannot be escaped. It is inconceivable that any of these cases can be tried without substantial evidence concerning Hurricane Rita and what it did. Each case will unfold against the background of related fact questions such as whether Rita's wind, and the rising water and rainfall it produced, were of sufficient magnitude to damage residential structures and foundations as alleged.[8]

These cases from the same massive hurricane are related. It would serve the goals of convenience, efficiency, and justice to have one pretrial court decide all the common issues the same way and without inconsistencies. This is all that Rule 13 requires. Indeed the rule was designed to cover cases like these. I would grant the motions as to all movants.

---

8. In addition to the background presence of Hurricane Rita, there are specific common issues in these cases, which are already being contested. We are told that several homeowners sought help from FEMA, that there are limits on what assistance can be accepted from FEMA and also from an insurer, and that FEMA records cannot be obtained through discovery without the homeowner's consent. These assertions—some of them factual and undenied and therefore accepted as true under Rule 13.3(j)—would benefit from uniform and consistent treatment in each case. In addition, plaintiffs seek attorneys'

fees in each case, including a 40% contingent fee; defendants say they want to inquire about counsel's economies of scale, since each of these cases has virtually identical form petitions, interrogatories, and requests for production.