## In re NATIONAL LLOYDS INSURANCE COMPANY HAIL LITIGATION.

### MDL No. 14–0004.

Texas Judicial Panel on Multidistrict Litigation.

May 13, 2014.

On Review By The Multidistrict Litigation Panel

Justice ELIZABETH LANG MIERS delivered the opinion of the MDL panel.

National Lloyds asks that we consolidate twenty-six cases, "and any future related cases that may be filed," into three different pretrial MDL courts. It contends that the cases are related geographically and "allege the same contractual and extra-contractual claims and/or seek the same discovery regarding National Lloyds' 'general business practice' and 'outcome oriented investigations' with regard to handling of property damage claims following a storm." National Lloyds generally refers to the cases as "claims arising from hail and wind storms in close proximity" and describes the various cases and how they "can be grouped into three distinct geographic regions for purposes of relatedness" as follows:

(1) The 17 North Texas cases in Appendix A consist of cases filed in Dallas and Tarrant counties, and contain dates of loss between July 2010 and May 2013;

(2) The 5 Central Texas cases in Appendix B consist of cases filed in McLennan and Bexar counties, and contain dates of loss between October 2009 and October 2012; and

(3) The 4 Southeast Texas cases in Appendix C consist of cases filed in Wharton, Harris and Liberty counties and contain dates of loss between 2011 and April 2013.

The appendices identify the styles of the cases, the courts in which they are pending, and the law firms representing the plaintiffs in each case, but do not explain what the various weather or other events

are that underlie the claims in each lawsuit or when they occurred.

Plaintiffs oppose the motion, arguing that the cases are not related, that there is no authority to support the creation of multiple MDLs based on arbitrarily designated "distinct geographic regions involving more than 15 different dates of loss ranging from the years 2009 to 2013," and alleging multiple types of claims. Plaintiffs contend that "[e]ach plaintiffs' case stems not only from different losses, but also from the collective allegations of each individual complaint, which delve into not only National Lloyds' general business practices, but the specifics of each individual claim, individual adjusters' and claim examiners' conduct, National Lloyds' policy provisions and coverages afforded individual insurers, and National Lloyds' application of its policies and procedures in regards to each individual case." They argue that National Lloyds is simply seeking its own MDL which we have already held is not permitted. Plaintiffs contend that our previous opinion disposes of the issues here, characterize this motion as a "second bite at the apple," and contend that the motion should be denied. They also ask for sanctions.

### ARE THESE CASES "RELATED"?

Rule 13.3(*l*) of the Texas Rules of Judicial Administration provides: "The MDL Panel may order transfer if three members concur in a written order finding that related cases involve one or more common questions of fact, and that transfer to a specified district court will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of the related cases." Tex.R. Jud. Admin. 13.3(*l*), *reprinted in* Tex. Gov't Code Ann., tit.2, Subtitle F app. (West 2013); *see* Tex. Gov't Code Ann. § 74.162 (West 2013); *In re Ad Valorem Tax Litig.*, 216 S.W.3d 83, 84 (Tex.M.D.L. Panel 2006).

National Lloyds argues that "[t]he cases in appendices A, B and C meet the Panel's definition of relatedness because they consist of one or more weather events occurring in close proximity to one another," seek the same discovery, make the same allegations, and:

> The cases within each of these three groups are related to one another because they concern National Lloyds' same general business practice of adjusting claims in that area, and thus implicate the same common questions of fact surrounding the same adjusters and business practices for evaluating and paying for property damage caused by hail and wind storms there.

To support its argument that the cases are related, National Lloyds relies on our opinion in *In re National Lloyds Insurance Co. Hurricane Litigation*, 422 S.W.3d 926 (Tex.M.D.L. Panel 2013), where we stated:

> Cases are related where one or more significant weather events occurring in close proximity form the framework of the litigation, and the litigation involves allegations of similar standard business practices. Individual lawsuits will address wind, wind-driven rain, hail, wind-driven hail, storm surge, rising water, flooding, and/or rainfall. It is in this context that allegations of standard business practices giving rise to contract, statutory, and extra-contractual damages highlight the importance of coordinated management that will serve the convenience and efficiency of the litigants and the lawyers.

*Id.* at 930.

In that case, National Lloyds added eighty-five cases as tag-along cases to a hurricane MDL pretrial court in Houston. That court remanded all but one of the cases to their original courts. National Lloyds filed a motion for rehearing asking

us to consolidate the cases. We denied the motion to consolidate the cases in the Houston hurricane MDL pretrial court, consolidated sixty-three cases in an Hidalgo County hail storm MDL pretrial court, and denied the motion for rehearing as to the twenty-one other cases. *Id.* at 931–32. In evaluating whether and where to consolidate the cases, we concluded "that MDL treatment is inappropriate when the only common fact issue relates to standardized business practices and extra-contractual claims. To hold otherwise would result in insurer-specific MDL courts to which all cases raising those issues would be transferred. There must be something more." *Id.* at 930. We determined that the sixty-three hail storm cases we ultimately consolidated with the Hidalgo County hail storm MDL pretrial court were not related to the hurricane cases we had previously consolidated in the Houston hurricane MDL pretrial court. *Id.* But we determined that they were related to the Hidalgo County hail storm MDL pretrial court because they all involved hail storms in the same area that occurred in 2012, although each lawsuit may address different aspects of those weather events. *Id.* at 930–31.

The twenty-one remaining cases we discussed in that opinion are also among the twenty-six cases here. As to those twenty-one remaining cases, we said:

> We turn now to the remaining 21 cases subject to Judge Miller's remand which are scattered across Texas. National Lloyds informs us that these cases are related to the current National Lloyds MDL litigation: "Their only common fact issue is the way National Lloyds handles claims." We can glean only that the claims arise from a variety of wind storms, hail storms, plumbing leaks, and other assorted incidents occurring at unspecified times. Based upon our holding that claims challenging standard business practices standing alone are insuffi-

cient to establish relatedness, we deny the Motion for Rehearing with respect to these cases.

*Id.* at 931.

National Lloyds acknowledges here, as it did in *In re National Lloyds Insurance Co. Hurricane Litigation,* that the only common questions of fact are the business practices and claims handling. *See id.* at 931–32. But we have specifically held that different cases involving unrelated weather events are not "related" solely because they involve allegations of similar business practices. *Id.* at 931–32.

National Lloyds also states that the cases, as separated into three geographical groups, satisfy our requirement that the cases involve "one or more significant weather events in close proximity." But there do not seem to be any common issues about the weather events other than the claim that losses resulted from various hail and windstorms. The "one or more significant weather events occurring in close proximity" to which we referred in *In re National Lloyds Hurricane Litigation* were a series of hail storms occurring in Hidalgo County in 2012, which we consolidated in one MDL court, and earlier hurricanes, which we consolidated in another. *Id.* We have consolidated cases in an MDL pretrial court that involved claims from similar events occurring two years apart, *In re Tex. Windstorm Ins. Ass'n Hurricanes Rita and Humberto Litig.,* 339 S.W.3d 401 (Tex.M.D.L. Panel 2009) (Hurricanes Rita and Humberto), claims from similar events that occurred over a period of two years, *In re State Farm Lloyds Hurricane Litig.,* 387 S.W.3d 130 (Tex. M.D.L. Panel 2013) (changes in claims handling for shingle damage), and over a one year period from the same type of event, *In re National Lloyds Ins. Co. Hurricane Litig.,* 422 S.W.3d 926 (2012 hail

storms in Hidalgo County). But we have not consolidated cases arising from a variety of unrelated weather events occurring over a two or three year period.

These cases involve "dates of loss" from hail and windstorms occurring over a period of four years originating in seven different counties. And even within the proposed MDL geographic groups, the "dates of loss" cover a period of three years in two groups and two years in the other group. The hail and wind storms here are not related and there are no issues common to the cases other than the business practices claims and claims handling relating generally to storm damage. There is no common issue about the storms, such as we considered in *In re Texas Windstorm Insurance Association Hurricanes Rita and Humberto Litigation* or the storm damages, such as we considered in *In re State Farm Lloyds Hurricane Litigation.* Additionally, the weather events relating to each claim in the three subgroups occurred over the course of two and three year periods. As a result, we conclude that these cases are not related.

## CONCLUSION

We have already held that common business practices and claims handling allegations do not alone make the cases related, and we made that holding specifically with regard to twenty-one of these twenty-six cases. *In re Nat'l Lloyds Ins. Co. Hurricane Litig.*, 422 S.W.3d at 931–32. We have noted that there must be more and, without that, there is no basis on which to consolidate these cases in MDL courts. *See id.* at 929–30. Consequently, we conclude that these cases involving various storms occurring over a two to three year period are not sufficiently "related" to justify consolidating them into these geographic groupings. Because we decide that these cases are not "related," we do

not need to reach the question of whether transfer will be for the convenience of the parties and witnesses and promote the just and efficient conduct of the actions. We deny the motion for transfer for coordinated or consolidated pretrial proceedings and deny plaintiffs' motion for sanctions.

### ON REVIEW BY THE MULTIDISTRICT LITIGATION PANEL

HARVEY BROWN, Justice, concurring.

I join in the Panel's holding and opinion. I write separately to emphasize that National Lloyds's motion for transfer leaves more questions unanswered than it attempts to answer.

For first-party insurance claims against a common insurer arising out of significant weather events, cases are related only if they allege that (1) the insurer handled claims in accordance with standard business practices and (2) the significant weather events occurred in "close proximity." *In re Nat'l Lloyds Ins. Co. Hurricane Litig.*, 422 S.W.3d 926 (Tex.M.D.L. Panel Order 2013).

I agree that the record does not demonstrate close proximity. But we have not provided guidance on how close the proximity must be except to say that neither three years for storms in two counties nor two years for storms in three counties is close enough.

To avoid over-complicating the issues, I would begin with a rebuttable presumption that significant weather storms that occur in the same county or contiguous counties within two years (a time period the Panel notes we have previously approved) satisfy close proximity for purposes of the creation of an MDL.

But I would allow these boundaries to be expanded or limited based on the claims-handling structure used by the insurer because there are instances when the prox-

imity of storm events does not directly inform us whether the insurer used similar claims-handling practices in the suits potentially being consolidated. If, for example, the alleged wrongful claims-handling process is one of long-standing practice, the lawsuits might involve common questions of fact despite a significant span of time. If, however, the claims-handling process significantly changed between storms otherwise considered temporally proximate, lawsuits arising from those storms might not involve common questions of fact. Therefore, when claimants allege that the insurer was implementing a widespread practice over a large period of time or seek discovery for practices over a large period of time, I would consider those allegations to answer the question of whether there was sufficient proximity to cause the cases to be related. *See In re State Farm Lloyds Hurricane Litig.*, 387 S.W.3d 130, 134 (Tex.M.D.L. Panel 2012) (noting that time frame used for finding cases related was "time frame the plaintiffs have themselves drawn" for examining corporate policies).

The same is true for geographic proximity. If the insurer's employees alleged to have handled claims from different storms are the same individuals or they report to the same supervisor, lawsuits arising from the handling of those claims might involve common questions of fact even though the geographic territory is otherwise large. Therefore, when claimants assert claims for practices covering multiple counties or seek discovery regarding practices in multiple counties, I would consider those allegations in determining whether there is sufficient proximity to cause the cases to be related.

Proximity, in either case, is probative of the true issue making cases potentially related: whether the same claims-handling practices are implicated in all of the individual suits. In other words, I view the close proximity requirement for significant weather storms as a proxy or surrogate for the issue of whether the same claims handling practices are involved in the cases. Accordingly, I believe the facts necessary to prove close proximity and establish that cases are related should focus less on the geographic and temporal proximity of the storms themselves and more on the insurer's claims-handling procedures implicated in the lawsuits.

For geographic proximity, I would focus less on the location of the storm and more on the location of the decision-makers who allegedly improperly denied or underpaid the claims. When storms are geographically close, the insurer's employees who handled individual claims are more likely to have the same supervisor or follow the same practices. For temporal proximity, I likewise would focus less on the timing of the storms and more on the timing of the claims-handling acts within the span of potentially evolving corporate policies and procedures affecting the insurer's claims practices.

Because this would be a new focus in our inquiry, the record does not demonstrate that the same claims-handling process is implicated for different storms across different counties and multiple years. For example, National Lloyds does not inform us:

- Were the claims handled by the same National Lloyds office? Does National Lloyds have regional offices that cover both Dallas and Tarrant County?

- Was the National Lloyds employee with ultimate responsibility the same for all 17 claims?

- Are the relevant portions of the policies involved in the claims the same or

substantially similar?[1]

- Is there a single National Lloyds policy or procedure manual that applies to all of the claims?

- Did the individual adjusters for the claims receive common training or instruction for the types of claims at issue?

- How much overlap is there in the identity of National Lloyds employees likely to be deposed by the plaintiffs because of their claimed involvement in enacting standard claims-handling practices and procedures?[2]

These and similar questions are raised when we examine whether there is geographic or temporal proximity of the alleged wrongful claims-handling process.

Because the record leaves these types of questions unanswered and does not demonstrate close proximity of the storms themselves, National Lloyds has not demonstrated that the requested cases involve a sufficient number of questions of common fact to satisfy the threshold relatedness inquiry.

I therefore concur in the Panel's holding.

---

1. *See In re Delta Lloyds Ins. Co. of Houston,* 339 S.W.3d 384 (Tex.M.D.L.2008) (finding commonality in part because claims arose from "standardized policy language").

2. *Cf. In re Hurricane Rita Evacuation Bus Fire,* 216 S.W.3d 70, 72 (Tex.M.D.L.2006) (noting that lawyers for eight lawsuits arising out of bus crash would "be examining the same large pool of employees").